*382 Order, Supreme Court, New York County (Micki A. Scherer, J.), entered on or about May 10, 2006, which dismissed the indictment with leave to re-present, reversed, the indictment reinstated, and the matter remanded for further proceedings.
Defendant and three others were charged with burglarizing a truck. The police had been following a minivan in which the four men were riding, when it pulled up near the truck.* Two police officers testified to the grand jury that they witnessed defendant standing on the sidewalk and looking up and down the block while two of the other men removed a bag from the rear of the truck. The fourth man remained in the driver’s seat. Another officer testified that he saw defendant walking back to the minivan with the other two men, one of whom was carrying the bag. A fourth officer testified that he recovered a box cutter from defendant’s pocket during a search incident to his arrest.
After the grand jury returned indictments against the two men who actually removed the bag from the truck, the prosecutor informed them that defendant wished to testify. Defendant testified that he was inside the minivan when two of the men saw the truck and instructed the driver to pull over. Defendant told them to “leave it alone” but the two men ignored him and got out of the minivan. After they failed to immediately return he got out of the minivan to see what they were doing. When he saw them remove a bag from the truck he told them to “leave that alone” and went back to the minivan, where he was arrested.
The prosecutor asked the grand jury at that point to indict defendant; however, the grand jury asked if it could delay its decision until after it heard from the man who was driving the minivan, since that “would certainly potentially—be quite relevant to our decision on defendant.” The prosecution assented to that request. The driver testified that defendant and another one of the men were in the minivan when they approached him and the fourth man. He was asked to drive the minivan, and, at some point, the three other men all exited the minivan at the same time, and, upon their return, were arrested. The motion court characterized certain questions asked of the driver by the grand jury as focusing on inconsistencies between his own *383 testimony and that of defendant. This led the court to believe that the grand jury intended to rely on the driver’s testimony as a factor in their deliberations regarding the defendant.
The grand jury indicted defendant on the charges of burglary in the third degree, grand larceny in the fourth degree and 10 counts of possession of burglar’s tools. It declined to indict the driver. The court dismissed the indictment on the ground that the prosecutor should have instructed the jury that the driver’s testimony could only be considered if there was corroborating evidence.
We agree that the prosecution should have instructed the grand jury that the driver’s testimony was legally sufficient to support an indictment only if corroborated. The concurrence is incorrect that Criminal Procedure Law § 60.22, which requires accomplice testimony to be corroborated, does not apply to this case. It applies, albeit indirectly, pursuant to CPL 190.65 (1), which provides that: “Subject to the rules prescribing the kinds of offenses which may be charged in an indictment, a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense provided, however, such evidence is not legally sufficient when corroboration that would be required, as a matter of law, to sustain a conviction for such offense is absent, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.” (Emphasis added.)
Prior to the testimony of the driver, the grand jury was apparently unsatisfied that the testimony of the four police officers provided a legally sufficient basis for indicting defendant. Indeed, the motion court, which reviewed the grand jury minutes and was in a far better position to assess the degree to which the grand jury relied on the driver’s testimony, found that the grand jury considered the testimony a significant factor in whether it should indict. At the time the grand jury deliberated concerning defendant and the driver, the driver was an “accomplice” as that term is defined by CPL 60.22 (2) (a); that is, “a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in . . . [t]he offense charged.” As such, his testimony, if used to convict, would have had to be corroborated. Moreover, that the driver may have been testifying in his own behalf, as opposed to for the People, is irrelevant (see People v Diaz, 19 NY2d 547, 549 [1967]).
CPL 190.25 (6) provides, in pertinent part, that “[w]here necessary or appropriate, the court or the district attorney, or both, *384 must instruct the grand jury concerning the law with respect to its duties or any matter before it.” Here, because the circumstances were such that an indictment based on the driver’s uncorroborated testimony would have been in contravention of CPL 190.65 (1), we find that it was both necessary and appropriate for the prosecution to instruct the grand jury that it could not rely on the driver’s testimony to indict defendant unless it also found there to be evidence which corroborated the testimony. Indeed, if, under the concurrence’s theory, it was not necessary and appropriate to so instruct the grand jury in this case, we can think of hardly any case in which it would be necessary and appropriate to instruct a grand jury. This would render CPL 190.25 (6) purposeless.
Nevertheless, we reverse the order appealed, because we find that the failure to instruct did not rise to the level of impairing the integrity of the grand jury (see People v Darby, 75 NY2d 449, 455 [1990]; cf. People v Schwartz, 21 AD3d 304, 307 [2005], Iv denied 6 NY3d 845 [2006]). Defendant’s own testimony and the testimony of the four police officers provided sufficient evidence tending to connect defendant to the crimes with which he was charged (see People v Johnson, 32 AD3d 761 [2006], lv denied 7 NY3d 902 [2006]). Concur—Mazzarelli, J.E, Moskowitz and Acosta, JJ.
Catterson, J., concurs in a separate memorandum as follows: Because I believe that the majority’s dicta to the effect that the accomplice liability instruction must be given in the grand jury is a radical departure from this Court’s precedent, I must concur separately for the reasons set out below. I believe that the majority’s dicta articulates for the first time the dubious proposition that instructions intended for petit juries must be given to grand juries on the possible pain of dismissal of the indictment.
I would reinstate the indictment because the standard for grand jury instruction is far less stringent than the standard for instructing petit juries, and because the provision for an accomplice corroboration instruction on which the defendant relies is one that only applies, but for the very rare case, to a petit jury and not a grand jury.
The defendant was arrested, along with three codefendants (David Alache, Leopaldo Morales and Luis Nunez), in the commission of a burglary of a parked truck. The undisputed facts are as follows: On November 29, 2005, Alache, Morales, Nunez and the defendant parked a minivan near a white box truck. Alache and Nunez got out of the minivan. The defendant got out either at the same time or a short time later. Morales, the *385 driver, stayed in the minivan. Alache removed a bag from the box truck, joined the defendant, who had been looking up and down the block, and the three returned to the minivan. The four men were arrested. The same grand jury deliberated the indictments of all four codefendants. Following the testimony of the four police officers on February 14, 2006, the grand jury voted to indict David Alache and Luis Nunez on burglary and other charges. Alache and Nunez later pleaded guilty.
The instant dispute arose out of the defendant’s subsequent indictment for third-degree burglary, fourth-degree larceny and 10 counts of possession of burglar’s tools. On February 16, 2006, the grand jury was informed that defendant would testify on his own behalf. The defendant testified that he told Nunez to “leave that alone” (referring to the white box truck) as they were driving past the white truck, and then went to see what the codefendants were doing. After the defendant testified, the prosecutor requested the grand jury to vote on whether to indict defendant. This exchange ensued between the Assistant District Attorney (ADA) and members of the grand jury after they were told that codefendant Morales would also testify:
“grand juror: Since the testimony of defendant Morales would certainly potentially—be quite relevant to our decision on defendant Pacheco can we hold off on considering the charges until we heard from that witness?
“[ada]: That’s a good question. Since I am not certain of the answer, I am going to step out and I will get right back to you.
(ADA . . . AND GRAND JURY REPORTER LEAVE GRAND JURY CHAMBER AND RETURN SHORTLY THEREAFTER) “[ada]: Sir, the answer to your question is, as with any other case, you can decide to vote or you can decide that you don’t wish to vote at this time and you wish to hear additional evidence, so it’s in your hands.
“grand juror: Would we take a vote on whether we want to take a vote? Is that how it’s done?
“[ada]: Yes.
(ADA . . . AND GRAND JURY REPORTER LEAVE GRAND JURY CHAMBER AND RETURN SHORTLY THEREAFTER) “foreperson: We would like to abstain from voting today and vote tomorrow after hearing from Morales.”
Morales testified on February 17, 2006. The record shows that the testimony of the defendant diverged from the testimony of Morales in two key areas. The first is that while the defendant testified that he exited the van shortly after Nunez and Alache, Morales testified that all three exited at the same time. *386 The second area concerned Morales’ interactions with the other men in the van. At the completion of testimony, the grand jury returned a no true bill as to Morales, but indicted the defendant.
On March 2, 2006, the defendant moved to dismiss the indictment under CPL 210.20 (1) (c) and 210.35 on the ground that the grand jury’s integrity was impaired as a result of the prosecution’s failure to give adequate instructions to the jury. The record does not show that he specified what instruction should have been given.
On April 19, 2006, the court dismissed two of the charges against defendant for possession of burglar’s tools, found that the integrity of the jury was not impaired by questions to the defendant regarding his criminal history, and raised the issue, sua sponte, of the People’s failure to give instructions regarding codefendant testimony. The court stated, “[Not giving] any instruction as to whether or not [the grand jury] could consider the testimony of a co-defendant ... in this case . . . [is] a problem.” The court ultimately granted defendant’s motion to dismiss the indictment.
The court concluded that the grand jury’s questions and the deferral of its vote made it clear that the grand jury intended to use Morales’ testimony in its deliberations regarding defendant’s indictment. “[I]t was incumbent upon the People, at a minimum, to provide a limiting instruction with respect to the use of Morales’ testimony as against defendant Pacheco.”
On appeal, the People argue that the court erred in dismissing defendant’s indictment on the basis that a limiting instruction is required in order for a grand jury to consider the testimony of a codefendant. The People argue that they were not required to give an instruction because Morales testified on his own behalf; not for the purpose of inculpating defendant. Further, the People argue that the testimony of four police officers adequately established a sufficient basis for an indictment of defendant without reference to anything Morales said.
The defendant asserts that the court properly held that the grand jury’s integrity was impaired when it considered Morales’ testimony without a limiting instruction. Specifically, the defendant now argues—for the first time—that the People erred in failing to give the accomplice instruction pursuant to CPL 60.22 (1). That section provides that a “defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.”
In my opinion, the court and the majority in dicta both erred *387 in requiring a limiting instruction on codefendant Morales’ testimony. Nor does the defendant improve his position by now relying on CPL 60.22, a provision that applies to instructing trial juries. It is well-established that the standard for dismissing an indictment is a “very high hurdle of impairment of the integrity of the Grand Jury process, plus prejudice.” (People v Darby, 75 NY2d 449, 455 [1990].) An indictment can only be dismissed when a defect in the grand jury proceeding is so egregious that “the integrity thereof is impaired and prejudice to the defendant may result.” (CPL 210.35 [5]; see also People v Morales, 183 AD2d 570, 572 [1st Dept 1992], lv denied 80 NY2d 896 [1992].) In my view there was no such egregious impairment here.
In my view it was clear error for the court to rule that an accomplice corroboration instruction must be provided to the grand jury for codefendant testimony. The People correctly assert that the practice of a grand jury considering codefendant testimony is so universally accepted and uncontroversial that there does not appear to be any appellate decision directly addressing it. The grand jury has the right to call as a witness anyone believed “to possess relevant information or knowledge.” (CPL 190.50 [2], [3].) Indeed, the People are entirely correct that the principle is axiomatic.
In my view, CPL 60.22 would be erroneously applied since the provision applies to the instruction of trial juries, not grand juries. {See CPL 60.22 [a defendant may not be convicted on the basis of uncorroborated accomplice testimony].) Thus, while an accomplice corroboration instruction is mandated for a jury trial, it is not required in a grand jury proceeding.
This is entirely consistent with well-established criminal jurisprudence, viz., standards applied to grand jury instructions are less stringent than those applied to instructions to a trial jury. In People v Calbud, Inc. (49 NY2d 389 [1980]), the Court of Appeals made plain that the prosecution only needs to provide the grand jury with enough information to enable it “intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime.” (Id. at 394-395.) In Calbud, the Court held that “it would be unsound to measure the adequacy of the legal instructions given to the Grand Jury by the same standards that are utilized in assessing a trial court’s instructions to a petit jury. Indeed, the difference in the extent and quality of the legal instructions that must be given to the two bodies is reflected in the Criminal Procedure Law, which, on the one hand, directs the court or District Attorney to *388 give legal instruction to the Grand Jury only ‘[w]here necessary or appropriate’ (CPL 190.25, subd 6), but, on the other hand, requires a Judge presiding over a trial before a petit jury to state in detail ‘the fundamental legal principles applicable to criminal cases in general’ as well as ‘the material legal principles applicable to the particular case’ and ‘the application of the law to the facts’ (CPL 300.10, subd 2) . . . [W]e hold that a Grand Jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law.” (Id. at 394; see also People v Valles, 62 NY2d 36 [1984] [prosecutor’s failure to give mitigating defense instructions did not render grand jury proceeding defective]; People v Goetz, 68 NY2d 96 [1986] [prosecutor’s erroneous charge on the defense of justification did not prejudice defendant so as to render proceeding defective]; People v Darby, 75 NY2d at 455 [lack of evidentiary instruction to grand jury did not meet the “unquestionably high prong” of impairment of integrity].)
New York’s accomplice corroboration rule is an unusual one. “Although many States, and the Federal courts, permit a conviction to rest solely on the uncorroborated testimony of an accomplice, our Legislature requires that accomplice testimony be corroborated by evidence tending to connect the defendant with the commission of the crime.” (People v Steinberg, 79 NY2d 673, 683 [1992] [citations and internal quotation marks omitted].) As is evident, this “persistently unique” rule (People v Breland, 83 NY2d 286, 293 [1994]) reflects a legislative judgment that a defendant’s guilt beyond a reasonable doubt cannot be established reliably absent some evidence that satisfies the less than exacting requirements of the rule. (See People v Besser, 96 NY2d 136, 143 [2001] [accomplice corroboration rule requires “some basis for the jury to conclude the accomplice testimony is credible”].) Today, without any support for its position, the majority in dicta expands this “persistently unique” rule by extending it to grand jury proceedings, even though a defendant’s guilt or innocence is emphatically not at issue and even though the standard for returning an indictment is far lower than the standard for finding a defendant guilty.
The majority’s citation to CPL 190.65 (1) does not alter this conclusion. That section merely stands for the proposition that a defendant may not be indicted for an offense which requires corroboration without such evidence being presented to the grand jury. To transmogrify this section into a requirement that the People charge accomplice liability flies in the face of Calbud and its progeny. “When the District Attorney’s instructions to the Grand Jury are so incomplete or misleading as to substan *389 tially undermine this essential function, it may fairly be said that the integrity of that body has been impaired . . . where, as here, the District Attorney omits information which would be essential for the petit jury’s determination of guilt but which is not essential to the Grand Jury’s less exacting responsibility of determining whether a prima facie case exists, it is inappropriate to dismiss the indictments on the ground specified in CPL 210.35 (subd 5).” (Calbud, 49 NY2d at 396.) The majority fails to demonstrate that the accomplice liability charge to a petit jury is necessary to a prima facie case.
Finally, I find no merit in the defendant’s contention that pursuant to CPL 190.30, the provisions of CPL article 60 are in this case applicable to grand jury proceedings. CPL 190.30 (1) states that they are applicable “where appropriate.” In my view, this was not a case where it was appropriate to instruct the grand jury. The defendant urges the court to apply the standard of trial jury instruction cited in People v Leon (121 AD2d 1, 6 [1st Dept 1986], lv denied 69 NY2d 830 [1987]) where the Court held that harmful error resulted because a jury was not instructed on accomplice testimony. The defendant asserts that, similarly, “the grand jury must be properly instructed in the use of [accomplice] testimony or the integrity of the proceedings will have been impaired.” In my opinion, the defendant misapplies Leon. In fact, the Court in Leon concluded that the jury must be instructed when “the undisputed evidence establishes that a witness is an accomplice.” (Id.) Further, the Court held that “when the case against the defendant rests substantially on the testimony of a witness who is an accomplice as a matter of law, or who may be one as a matter of fact, it is best that the court offer to charge the accomplice-corroboration rule if not requested by the defendant.” (Id. [emphasis added].) This is hardly the mandatory “requirement” for accomplice instruction that defendant seeks to apply. The Leon Court goes on to explain that where there is a question of proof regarding a purported accomplice’s complicity, the question should be left to the jury. (Id.)
That is exactly what happened in this case. Not only did the grand jury decide that Morales was not an accomplice and return a no true bill, but, unlike the circumstances in Leon where the defendant’s conviction for second-degree murder rested almost entirely upon the witness’s testimony, here there was ample testimony beyond that of Morales. There is no indication that the grand jury relied solely on Morales’ testimony to indict the defendant.
For all the foregoing reasons, I find that the integrity of the *390 grand jury proceedings was not impaired to an extent that mandates dismissal of the indictment.

 Because of the secrecy attendant to grand jury minutes, the facts are taken from a summary provided by the motion court in the decision appealed. Defendant’s previous motion to this Court to unseal the grand jury minutes was denied (2008 NY Slip Op 61439[U] [2008]).